Eugene McMAHON and Julia McMahon, individually and as Trustees of The David J. Hodder & Son, Inc. Employee Pension Plan; The David J. Hodder & Son, Inc. Profit Sharing Plan; The Laurie Funeral Home, Inc. Employee Pension Plan; The Laurie Funeral Home Profit Sharing Plan, Plaintiffs,

v.

SHEARSON/AMERICAN EXPRESS, INC. and Mary Ann McNulty, Defendants.

84 Civ. 3331 (LFM).

United States District Court, S.D. New York.

Sept. 25, 1985.

---

Cohn & Blau by Frederick H. Cohn, New York City, for plaintiffs.

Theodore A. Kresbach and Harry D. Frisch, Shearson Lehman Brothers, Inc., New York City, for defendants.

## OPINION

MacMAHON, District Judge.

Defendants move, pursuant to 9 U.S.C. § 3 (1970), for an order staying this action pending arbitration, or, in the alternative, pursuant to Rules 12(b)(6), 12(f) and 9(b), Fed.R.Civ.P., for an order dismissing plaintiffs' amended complaint for failure to state a claim upon which relief can be granted.

## FACTS

This is an action brought by plaintiffs, Eugene and Julia A. McMahon, individually and as trustees of the David J. Hodder & Son, Inc. Employee Pension Plan; the David J. Hodder & Son, Inc. Profit Sharing Plan; the Laurie Funeral Home, Inc. Employee Pension Plan; and the Laurie Funeral Home, Inc. Profit Sharing Plan ("the trusts"), against Shearson/American Express, Inc. ("Shearson"), a brokerage firm, and Mary Ann McNulty ("McNulty"), a registered representative who was responsible for plaintiffs' accounts at Shearson.

On June 15, 1982, in connection with the opening of her joint account at Shearson, Julia McMahon entered into a customer's agreement which contained the following arbitration provision:

"Unless unenforceable due to federal or state law, *any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration* in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. * * * Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof (emphasis added)."[1]

---

1. Customer's Agreement ¶ 13.

On October 26, 1984, plaintiffs filed an amended complaint, alleging, in essence, that McNulty, with the knowledge and consent of Shearson, (1) engaged in "churning" or the fraudulent and wilful practice of trading extensively solely to maximize commissions, (2) intentionally and recklessly violated Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act")[2] and Rule 10b–5 promulgated thereunder, by making false statements and omitting material facts from the advice given plaintiffs, and (3) violated the Racketeer Influenced and Corrupt Organization Act of 1974 ("RICO").[3]

Defendants move for an order compelling plaintiffs to arbitrate their state law claims, as well as their claims under Section 10(b) of the 1934 Act and RICO. Alternatively, defendants move to dismiss the amended complaint on the following grounds: (1) failure to comply with the pleading requirements of Rule 9(b), Fed.R. Civ.P.; (2) lack of subject matter and pendent jurisdiction; (3) absence of an implied private cause of action for alleged violation of the rules of the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc.; (4) failure to state a claim under RICO; and (5) unavailability of punitive damages.

## DISCUSSION

The United States Arbitration Act,[4] "reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts....' "[5] Accordingly, the Act provides:

"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transactions ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

The customer's agreement, entered into between Shearson and McMahon, contains McMahon's agreement to arbitrate "any controversy arising out of or relating to" her securities at Shearson or to any "transactions" with Shearson for her. Defendants have therefore petitioned this court for an order compelling arbitration of this action.[6]

To prevail on a motion to compel arbitration, a party needs only to establish (1) the existence of an agreement to arbitrate, (2) arbitrable claims, and (3) no waiver of the right to arbitrate.[7] Plaintiffs contend that the arbitration provision in the customer's agreement is not enforceable because (1) the customer's agreement is a contract of adhesion, (2) fraud is not an arbitrable issue, and (3) defendants have waived their right to arbitrate.

We find that plaintiffs' arguments are wholly unconvincing. First, it is well settled that one who signs a contract, in the absence of fraud or misconduct by another contracting party, is conclusively presumed to know its contents and to assent to them.[8] Julia McMahon signed the customer's agreement and has not demonstrated that it was entered into under fraud or duress. Arbitration clauses are routinely upheld by the courts, and, given plaintiffs' sizeable investment, there is nothing to indicate that they were without bargaining power. Moreover, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–

---

2. 15 U.S.C. § 78j(b) (1981).

3. 18 U.S.C. § 1962(c) (1982).

4. 9 U.S.C. §§ 1 *et seq.* (1970).

5. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510–511, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974), *citing* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924).

6. 9 U.S.C. § 3 (1970).

7. *Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240 (E.D.N.Y.1973).

8. *Fustok v. Conticommodity Services, Inc.,* 577 F.Supp. 852, 856 (S.D.N.Y.1984).

06, 18 L.Ed.2d 1270 (1967), the Supreme Court held that "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." Therefore, even if we were to assume that the customer's agreement was fraudulently induced, the breadth of the arbitration provision would mandate that the issue of fraud in the inducement also be referred to arbitration.

■■■ Second, plaintiffs argue that their allegations of common law fraud are not arbitrable because the arbitration provision does not contemplate an action in tort. This argument is without merit. The substance of plaintiffs' amended complaint, that defendants excessively "churned" their securities accounts and fraudulently represented the status of the accounts, is clearly within the scope of the arbitration clause as it arose from and relates to plaintiffs' accounts at Shearson. Moreover, in *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court recently held that a district court is required to compel arbitration of state law fraud claims where the parties entered into an arbitration agreement similar to the one presented here.

Finally, plaintiffs contend that defendants waived their right to arbitrate this action when they commenced a state court action against plaintiffs. We find that, since the prior state court proceeding involves issues only tangentially related to those at stake here, that proceeding has no bearing on this action and certainly no effect on plaintiffs' agreement to arbitrate. We therefore conclude that the federal Arbitration Act[9] mandates that we compel arbitration of all arbitrable claims arising out of plaintiffs' accounts or related transactions at Shearson.[10]

The remaining question for us is which of plaintiffs' claims are "arbitrable." The state law fraud claims are clearly arbitrable under the Supreme Court's decision in *Byrd.* The RICO claim is not arbitrable because of the important federal policies inherent in the enforcement of RICO by the federal courts.[11] Claims based on violations of the federal securities laws have been considered to be non-arbitrable based on the doctrine enunciated in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The validity of the *Wilko* doctrine, as applied to cases involving transactions outside the protection of the Securities Act of 1933 ("the 1933 Act"), however, is clearly suspect. The arbitrability of plaintiffs' Section 10(b) claims under the 1934 Act, therefore, merits some discussion.

In *Wilko,* the Supreme Court held that an agreement to arbitrate claims that arise under Section 12(2) of the 1933 Act[12] was not enforceable. The Court relied on three interconnected statutory provisions: (1) Section 14 of the 1933 Act which voids any "stipulation ... binding any person acquiring any security to waive compliance with any provision" of the 1933 Act; (2) Section 12(2) which creates "a special right to recover for misrepresentation which differs substantially from the common law action;" and (3) Section 22 which allows suits in any state or federal court of competent jurisdiction and provides for nationwide service.[13] The Court concluded that an agreement to arbitrate was a stipulation waiving the right to seek a judicial remedy and therefore was void.[14]

Several lower federal courts have assumed that *Wilko* applies to 1934 Act

---

9. 9 U.S.C. § 3 (1970).

10. *Dean Witter Reynolds Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

11. *See S.A. Mineracao da Trindade-Samitri v. Utah Int'l,* 576 F.Supp. 566, 574–76 (S.D.N.Y. 1983).

12. 15 U.S.C. § 77l(2) (1981).

13. *Wilko v. Swan,* 346 U.S. 427, 431, 434–35, 74 S.Ct. 182, 184, 186, 98 L.Ed. 168 (1953); 15 U.S.C. §§ 77n, 77l(2), 77v (1981). *See also Dean Witter Reynolds Inc. v. Byrd, supra* (White, J., concurring).

14. *Wilko v. Swan, supra,* 346 U.S. at 434–35, 74 S.Ct. at 186.

claims and have grouped claims under Section 12(2) of the 1933 Act, as well as claims under Section 10(b) of the 1934 Act, under the umbrella of non-arbitrable claims.[15]

The Supreme Court, however, first expressed reservations about the propriety of applying *Wilko* to claims arising under the 1934 Act in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). These reservations were recently reiterated in *Byrd, supra,* where the Court again "questioned the applicability of *Wilko* to a claim arising under Section 10(b) of the 1934 Act or under Rule 10b–5 because the provisions of the 1933 and 1934 Acts differ and because, unlike Section 12(2) of the 1933 Act, Section 10(b) of the 1934 Act does not give rise to a private cause of action."[16] The *Byrd* court declined to resolve the applicability of *Wilko* to Section 10(b) claims because the question was not properly before the Court. Justice White, however, in his concurring opinion, stated that "*Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act" and cast substantial doubt on the contrary holdings of lower federal courts.[17] He emphasized the salient distinctions between Sections 12(2) and 10(b):

> "While § 29 of that Act, 15 U.S.C. § 78cc(a), is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts. 15 U.S.C. § 78aa. More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express. See *Herman & MacLean v. Huddleston,* 459 U.S. 375, 380, and nn. 9–10, 103 S.Ct. 683, 686–87, and nn. 9–10, 74 L.Ed.2d 548 (1983). The

phrase 'waive compliance with *any provision of this chapter,*' 15 U.S.C. § 78cc(a) (emphasis added), is thus literally inapplicable. Moreover, *Wilko's* solicitude for the federal cause of action— the 'special right' established by Congress, 346 U.S., at 431, 74 S.Ct., at 184— is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action."[18]

The only time the Supreme Court was faced with the issue of whether *Wilko* applied to Section 10(b) claims, albeit in the context of an international contract, the Court held that the claims were subject to the parties' agreement to arbitrate.[19] The Court noted that "a colorable argument could be made that even the semantic reasoning of the *Wilko* opinion does not control the case before us," as "[t]here is no statutory counterpart of § 12(2) in the [1934 Act], and neither § 10(b) ... nor Rule 10b–5 speaks of a private remedy...."[20] Similarly, we entertain grave doubts about the legal correctness of overriding the parties' express agreement concerning arbitration of all controversies in the name of protecting federal jurisdiction over implied rights of action.

Based on Justice White's concurring opinion in *Byrd,* the reservations by the Supreme Court in *Scherk v. Alberto-Culver Co., supra,* and the strong national policy favoring the enforcement of arbitration agreements articulated in *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), several district courts have held that the *Wilko* doctrine does not extend to Section 10(b) claims.[21]

---

**15.** *See, e.g., DeLancie v. Birr, Willson & Co.,* 648 F.2d 1255, 1258–59 (9th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore,* 590 F.2d 823, 827–29 (10th Cir.1978); *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977).

**16.** *Dean Witter Reynolds Inc. v. Byrd, supra,* —— U.S. —— at ——, 105 S.Ct. at 1240 n. 1.

**17.** *Dean Witter Reynolds Inc. v. Byrd, supra* (White, J., *concurring*), —— U.S. ——, 105 S.Ct. at 1243.

**18.** *Id.,* —— U.S. at ——, 105 S.Ct. at 1244.

**19.** *Scherk v. Alberto-Culver Co., supra.*

**20.** *Id.,* 417 U.S. at 513, 94 S.Ct. at 2454.

**21.** *See Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 83–685A, —— F.Supp. —— (N.D.Ga. May 16, 1985); *Gregory v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 84–1647 (M.D.Fla. March 9, 1985); *Greenstein v. First Biscayne Corp.,* No. 82–0584 (S.D.Fla. May 16,

Although there exists precedent in this circuit holding that Section 10(b) claims are not arbitrable,[22] there is doubt that these decisions retain viability in light of the Supreme Court's ruling in *Byrd.* In *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977), the trustees of a bankrupt securities brokerage firm sued four individuals, several corporate members of the New York Stock Exchange and the Exchange itself, alleging violations of the Bankruptcy Act,[23] the 1934 Act and various state corporate laws. In deciding whether to compel arbitration of the alleged violations of the anti-fraud provisions of the securities laws, the court examined "the public interest in the dispute, the degree to which the nature of the evidence made the judicial forum preferable to arbitration, and the extent to which the agreement was a product of free choice."[24] Pointing out that the case was "a claim of wholesale fraud" brought on behalf of hundreds of creditors, the court determined that the claim was imbued with strong public interest and protective public policy considerations which were inappropriate for enforcement by arbitration.[25]

We are not presented here with claims involving fraud, nor industry-wide practices which may tend to ensnare an unsuspecting public.[26] Plaintiffs' claim is simply that a single securities representative "churned" their accounts and made certain misrepresentations concerning the status of those accounts. Such a dispute over the management of an account neither raises broad issues of policy nor involves widespread industry practices and, therefore, touches none of the concerns at stake in *Allegaert* which mandate a judicial forum.

 We note the distinction between the 1933 Act and the 1934 Act, as well as the strong national policy favoring arbitration, and thereby accept *Byrd's* invitation to compel the parties' compliance with their express contractual obligations concerning arbitration. We consequently hold that the *Wilko* doctrine should not be extended to plaintiffs' Section 10(b) claims.[27] We do not find that all Section 10(b) claims, no matter what their factual underpinnings, are arbitrable, but only that this particular claim relating to the management of a securities account is appropriate for resolution by arbitration.[28] The non-arbitrable RICO claim shall be stayed pending arbitration of the common law and securities fraud claims. This stay is appropriate where the arbitrable claims "permeate" the case, and the validity of the RICO claim is uncertain at this early stage of the litigation.[29]

Accordingly, defendants' motions are granted to the extent that this court orders arbitration of all of plaintiffs' claims, except their claim brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (1982), the litigation of which is temporarily stayed pending arbitration. This action is placed on the suspense docket pending the outcome of arbitration.

So ordered.

1985); *Mann v. Foster & Marshall,* No. C84–925D (W.D.Wash. May 24, 1985).

**22.** *See, e.g., Allegaert v. Perot, supra.*

**23.** 11 U.S.C. §§ 701 *et seq.* (1979).

**24.** *Allegaert v. Perot, supra,* 548 F.2d at 436.

**25.** *Id.,* 548 F.2d at 436–38.

**26.** *See Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970).

**27.** *Finn v. Davis,* 610 F.Supp. 1079 (S.D.Fla. 1985); *Wells v. Oppenheimer & Co.,* 106 F.R.D. 258 (S.D.N.Y.1985).

**28.** *Finn v. Davis, supra.*

**29.** *See S.A. Mineracao da Trindade-Samitri v. Utah Int'l, supra,* 566 F.Supp. at 576.