**Rony ILAN, Plaintiff,**

v.

**SHEARSON/AMERICAN EXPRESS, INC. and Gila Altman, Defendants.**

**No. 83 Civ. 9319 (WCC).**

United States District Court,
S.D. New York.

Dec. 20, 1985.

Mannarino Bader & Bloom, P.C., New York City, for plaintiff; Howard D. Bader, Harvey L. Woll, of counsel.

Shearson Lehman Bros., Inc., New York City, for defendants; Harry D. Frisch, Theodore A. Krebsbach, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Rony Ilan ("Ilan") brought this action against Shearson/American Express, Inc. ("Shearson"), a securities brokerage firm, and Gila Altman ("Altman"), one of Shearson's brokers, alleging in essence that Altman, with Shearson's knowledge and consent, fraudulently induced him to trade on margin and churned his account, resulting in losses of approximately $100,000. Ilan alleges that Altman and Shearson thereby violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), promulgated thereunder. He also alleges pendent state law claims for fraud, breach of fiduciary duty, and breach of contract.[1]

This matter is now before the Court on defendants' motion pursuant to sections 2 and 3 of the Federal Arbitration Act, 9 U.S.C. §§ 2, 3 (1982), to compel arbitration of Ilan's federal and state law claims. For the reasons stated below, defendants' motion is granted.

*Background*

When Ilan opened his account at Shearson in February 1982, he entered into a customer's agreement which contained the following arbitration provision:

> *Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration* in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Board of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. If I do not make such an election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgement upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Affidavit of Harry D. Frisch, Exh. 3, ¶ 13 (emphasis added). As noted above, defendants seek to enforce this provision under sections 2 and 3 of the Federal Arbitration Act. Section 2 provides in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transactions ... shall be valid, irrevocable, and enforceable, save upon such

---

1. Ilan also alleged a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982). By Order dated October 18, 1984, I dismissed that claim on the authority of *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), *vacated*, — U.S. —, 105 S.Ct. 3550, 87 L.Ed.2d 763 (1985), and *Sedima S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *rev'd*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), without prejudice and with leave to move to reinstate the claim *nunc pro tunc* in the event that the Supreme Court reversed the court of appeals' rulings in those cases. Ilan has not moved to reinstate his RICO allegations.

grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1982).

There is little dispute that Ilan's agreement with Shearson falls within the broad scope of the Arbitration Act. His account with Shearson "evidence[s] a transaction involving commerce," and his claims clearly "aris[e] out of [the] contract" in that they all pertain to allegedly improper actions taken with respect to his account. *See, e.g., Rojas Cancanon v. Smith Barney, Harris Upham & Co.*, 612 F.Supp. 996, 998 (S.D.Fla.1985). However, Ilan contends that he cannot be compelled to arbitrate his claims because (1) defendants waived any right to arbitration by failing to timely assert it, and (2) the arbitration provision constitutes an unenforceable contract of adhesion.

*Discussion*

Before addressing Ilan's specific waiver and contract of adhesion arguments, it is necessary to consider the general arbitrability of his claims. Until recently, there was considerable disagreement concerning the arbitrability of state law claims that were pendent to or "intertwined" with federal claims. The Supreme Court ended that debate in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), in which it held that federal courts must respect and enforce agreements to arbitrate state law claims even if the federal claim to which they are pendent is nonarbitrable. Thus, it is clear that, at the very least, Ilan's state law claims must be sent to arbitration.

Unfortunately, in the process of resolving that troublesome issue, the Court created new uncertainty with respect to the arbitrability of claims under the Securities Exchange Act of 1934 ("the 1934 Act"). Most lower federal courts had considered such claims nonarbitrable on the authority of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

In *Wilko*, the Supreme Court held that predispute agreements to arbitrate claims arising under the Securities Act of 1933 ("the 1933 Act") were void. The Court's

decision was based on three interrelated provisions of the 1933 Act: section 14, which voids any "stipulation ... binding any person acquiring any security to waive compliance with any provision" of the Act; section 12(2), which provides a "special right to recover for misrepresentation which differs substantially from the common-law action," 346 U.S. at 431, 74 S.Ct. at 184; and section 22, which allows a plaintiff to sue in any state or federal court of competent jurisdiction and provides for nationwide service of process. The Court found that with these three provisions Congress intended to proscribe enforcement of agreements to arbitrate 1933 Act claims, concluding that such agreements would constitute "stipulation[s] waiv[ing] compliance" with that "provision" of the 1933 Act granting plaintiffs the special right to sue in court. *Id.* at 434–35, 74 S.Ct. at 186–87. The Court acknowledged that in the Federal Arbitration Act Congress had also expressed a strong federal policy in favor of arbitration, but concluded that that Congress did not intend that policy to apply to 1933 Act claims. *Id.* at 431, 438, 74 S.Ct. at 184, 188.

Lower federal courts extended *Wilko*, ruling that agreements to arbitrate claims under the 1934 Act were also void, but in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court questioned whether this extension of *Wilko* was appropriate. The Court noted that unlike section 12(2) of the 1933 Act, the 1934 Act contains no special private right of action. *Id.* at 513, 94 S.Ct. at 2454. The Court contrasted the express right of action of the 1933 Act with the implied right of action federal courts had found in section 10(b), and compared the broad jurisdiction of the 1934 Act with the more limited jurisdiction of the 1934 Act. *Id.* at 513–14, 94 S.Ct. at 2454–55. Yet, while it pointed out these differences between the statutes, the Court found it unnecessary to decide whether *Wilko* did in fact apply to claims under the 1934 Act.

Notwithstanding the Supreme Court's comments in *Scherk*, lower federal courts,

including the Court of Appeals for the Second Circuit, *see Allegaert v. Perot*, 548 F.2d 432 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), continued to hold that claims arising under the 1934 Act are not arbitrable. However, in its recent decision in *Byrd*, the Supreme Court again questioned the applicability of *Wilko* to claims arising under section 10(b). The Court reviewed the comments it had made in *Scherk*, but again declined to resolve the issue, stating that the question was not properly before it. 105 S.Ct. at 1240 n. 1.

Justice White, writing in concurrence, expressed his views more directly. He reiterated the differences between the 1933 and 1934 Acts that the Court had noted in *Scherk*, and stressed that *"Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act." 105 S.Ct. at 1244. He reasoned that because the right of action under section 10(b) is implied rather than express, the 1933 Act's proscription against stipulations waiving its provisions was "literally inapplicable," to section 10(b) claims. *Id.* Justice White also stated that *"Wilko's* solicitude for the federal cause of action—the 'special right' established by Congress [in the 1933 Act]—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law [fraud] action." *Id.* (quoting *Wilko*, 346 U.S. at 431, 74 S.Ct. at 184.). Justice White concluded that lower-court decisions extending *Wilko* to 1934 Act claims "must be viewed with some doubt." *Id.*

A growing number of district judges, including at least three in this circuit, have accepted the Supreme Court's invitation to reexamine the applicability of *Wilko* to 1934 Act claims and have held that section 10(b) actions are arbitrable. *See, e.g., Finkle & Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1508–09 (S.D.N.Y.1985); *McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384, 387–89 (S.D.N.Y. 1985); *Jarvis v. Dean Witter Reynolds, Inc.,* 614 F.Supp. 1146, 1150–52 (D.Vt. 1985). Other judges in this circuit have declined the opportunity, holding that we

are still bound by the court of appeals' decision in *Allegaert v. Perot*, 548 F.2d 432 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), that section 10(b) claims are not arbitrable. *See, e.g., Leone v. Advest, Inc.,* 624 F.Supp. 297 (S.D.N.Y.1985); *Weizman v. Adornato,* No. 84 Civ. 3603 (LDW) (E.D.N.Y. Apr. 24, 1985).

■ While the choice between these two approaches is a difficult one, I join those judges who have followed the Supreme Court's cautious lead, and conclude that section 10(b) claims are arbitrable. In particular, I find persuasive Justice White's reasoning that unlike the 1933 Act, the 1934 Act does not reveal a congressional intent to carve out an exception to the strong federal policy in favor of arbitration.

I also agree with Justice White that the Supreme Court's repeated suggestion that *Wilko* may not be applicable to claims under section 10(b) calls contrary authority into question. It is therefore not at all clear that the Second Circuit's opinion in *Allegaert* has continued viability. I also note that although the court of appeals had an opportunity in *Allegaert* to consider the concerns the Supreme Court had raised in *Scherk*, it did not do so. Thus, the court of appeals has not expressly rejected the result I reach today.

In addition, as Judge MacMahon of this Court has pointed out, *Allegaert* is distinguishable from this and most other customer-broker disputes. *McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. at 389. In *Allegaert,* the trustee of a bankrupt securities brokerage firm sued numerous individuals, several corporate members of the New York Stock Exchange, and the Exchange itself, alleging violations of the Bankruptcy Act, the 1933 Act, the 1934 Act, and various state law provisions. In deciding whether to compel arbitration of the alleged violations of the antifraud provisions of the federal securities law, including section 10(b) of the 1934 Act, the court of appeals examined "the public interest in

the dispute, the degree to which the nature of the evidence made the judicial forum preferable to arbitration, and the extent to which the agreement was a product of free choice." 548 F.2d at 436. Noting that the case was "a claim of wholesale fraud" brought on behalf of hundreds of creditors, the court determined that the claim was imbued with strong public interest and protective public policy considerations which were inappropriate for enforcement by arbitration. *Id.* at 436–38.

This case does not raise such wide-ranging issues. Ilan's claim is simply that a single stock broker induced him to engage in a few margin transactions, and that she churned his account. In Judge MacMahon's words, "[s]uch a dispute over the management of an account neither raises broad issues of policy nor involves widespread industry practices and, therefore, touches none of the concerns at stake in *Allegaert* which mandate a judicial forum." 618 F.Supp. at 389. Accordingly, I do not believe that *Allegaert* precludes me from compelling arbitration in this case.

For all of these reasons, I conclude that *Wilko* should not be extended to Ilan's section 10(b) claim, although I need not and do not decide whether all section 10(b) claims are arbitrable, no matter what the factual context. I hold only that *Wilko* does not apply here. I therefore turn to Ilan's two arguments in opposition to defendants' motion to compel arbitration— that defendants waived their right to arbitration, and that the Court should not enforce the arbitration provision of the customer agreement because it is a contract of adhesion.

■ Ilan's first argument can be easily dismissed. He contends that defendants waived their right to arbitration because they did not make their motion to compel arbitration until approximately a year and a half after this action was filed.[2] What Ilan ignores, however, is that defendants properly perceived little basis for a motion to compel arbitration until *Byrd* was decided. As discussed above, most federal

courts had concluded from *Wilko* that 1934 Act claims were nonarbitrable, and defendants have correctly suggested that it would have been futile for them to make a motion to compel arbitration when this action was first commenced. Indeed, the motion would have been denied and sanctions may well have been imposed. However, once *Byrd* was decided, there were new and legitimate grounds to argue that Ilan's claims were arbitrable, and at that point, defendants moved expeditiously. In view of these circumstances, I can find no basis for concluding that defendants waived their right to arbitration. *See Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025–27 (11th Cir.1982) (defendant did not waive right to arbitrate by failing to move to compel arbitration where such a motion would have been futile); *see also Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968) (in view of the "overriding federal policy favoring arbitration," waiver of right to arbitrate is "not to be lightly inferred").

■ Ilan's argument that the arbitration provision is an unenforceable contract of adhesion is also without merit. A contract of adhesion is said to arise when a contracting party with superior bargaining strength presents a standardized form agreement to a party of lesser bargaining power and requires that party to either accept or reject its terms without an opportunity for negotiation. *M/V American Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1489 (9th Cir.1983); *Finkle & Ross,* 622 F.Supp. at 1511. In the securities industry, the vast majority of brokerage firms require an investor to sign a contract with an arbitration clause in order to open an account, *see* Katsoris, *The Arbitration of a Public Securities Dispute,* 53 Fordham L.Rev. 279, 292 n. 86 (1984), and I have little doubt that few investors have sufficient bargaining power to negotiate such clauses out of their contracts. Thus, arbitration agreements such as the one presented in this case do come

---

**2.** Defendants asserted the arbitration provision as an affirmative defense in their answer.

within the ambit of the contract of adhesion doctrine.

However, not all such contracts are unenforceable. Even a contract that is the result of unequal bargaining power will be enforced unless its terms are unduly oppressive, unconscionable, or against public policy. *See Restatement (Second) of Contracts* § 208 comment d (1981); *id.* § 211 comment c. Ilan has made no specific showing that this arbitration clause is unfair or unconscionable, and the few decisions I have uncovered on this issue suggest that it should not be viewed as inherently unjust. *See, e.g., Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 n. 2 (8th Cir.1984). Ilan also has failed to show that the arbitration provision is contrary public policy. Indeed, as Judge Edelstein of this Court has suggested, it would be difficult to do so in light of the judicial and legislative presumption favoring the arbitration of disputes. *Finkle & Ross,* 622 F.Supp. at 1512 (*citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). Accordingly, I conclude that there is no reason to withhold enforcement of the arbitration agreement.

For all of these reasons, defendants' motion to compel arbitration of all of Ilan's claims is granted. This action is hereby stayed and transferred to the Suspense Docket of the Court. The parties are directed to advise the Court of the status of the arbitration proceedings within 60 days of the date of this Opinion and Order.

SO ORDERED.