**In re CURRENCY CONVERSION FEE ANTITRUST LITIGATION**

No. MDL NO. 1409.
No. M 21–95.

United States District Court,
S.D. New York.

June 16, 2005.

58

Merrill G. Davidoff, Ruthanne Gordon, Edward W. Millstein, David A. Langer, Jennifer MacNaughton, Berger & Montague, P.C., Philadelphia, PA, Co–Counsel for Plaintiffs.

Bonny E. Sweeny, Frank J. Janecek, Jr., Christopher M. Burke, David W. Mithcell, Amelia F. Burroughs, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA, Co-counsel for Plaintiffs.

Michael Buchman, Milberg Weiss Bershad & Schulman LLP, New York City, Co-counsel for Plaintiffs.

Dennis Stewart, Hulett Harper Stewart, San Diego, CA, Co-counsel for Plaintiffs.

Christopher R. Lipsett, David S. Lesser, Wilmer Cutler Pickering Hale & Dorr LLP, New York City, for Defendants MBNA Corporation and MBNA America Bank, N.A.

Daniel H. Squire, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC for De-

fendants MBNA Corporation and MBNA America Bank, N.A.

Jay N. Fastow, Bruce A. Colbath, Fiona A. Schaeffer, Weil, Gotshal & Manges LLP, New York City, for Defendant MasterCard International Corp.

M. Laurence Popofsky, Brian P. Brosnahan, Heller Ehrman White & McAuliffe LLP, San Francisco, CA, for Defendants Visa U.S.A., Inc.

Randall A. Hack, Edward C. Fitzpatrick, Timothy M. Maggio, Lord, Bissell & Brook LLP, Chicago, IL, for Defendant Visa International Service Association.

Charles E. Buffon, Robert D. Wick, Joshua Wolson, Covington & Burling, Washington, DC, for Defendants Bank One Corp. and Bank One, Delaware, N.A.

Peter E. Greene, Cyrus Amir–Mokri, Peter S. Julian, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendants J.P. Morgan Chase & Co., Chase Manhattan Bank, USA, N.A., and the Chase Manhattan Bank.

Mark P. Ladner, William R. Wade–Gery, Morrison & Foerster LLP, New York City, for Defendants Bank of America Corp. and Bank of America N.A. (USA).

George A. Cumming, Jr., Kent M. Roger, Morgan, Lewis & Bockius LLP, San Francisco, CA, for Defendants Household International, Inc. and Household Bank (SB), N.A.

Charles W. Douglas, David F. Graham, T. Robert Scarborough, Sidley Austin Brown & Wood LLP, Chicago, IL, for Defendants Citigroup, Inc., Citibank (South Dakota), N.A., Universal Bank, N.A., Universal Financial Corp., and Citicorp Diners Club, Inc.

Alan S. Kaplinsky, Edward D. Rogers, Mark S. Stewart, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendants Providian Financial Corp., Providian National Bank and Providian Bank.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

These class actions are consolidated for pretrial proceedings. Plaintiffs allege violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the South Dakota Deceptive Trade Practices Act ("DTPA"), arising from an alleged price-fixing conspiracy among VISA, MasterCard and their member banks (collectively "defendants") concerning foreign currency conversion fees. Plaintiffs move for reconsideration of this Court's March 9, 2005 Memorandum and Order with respect to those portions that resulted from defendants' motions to stay litigation pending arbitration. For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND

The factual background underlying these actions is set forth in this Court's prior opinions. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237 (S.D.N.Y. 2005) (*"Currency Conversion III"*); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555 (S.D.N.Y.2004) (*"Currency Conversion II"*); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385 (S.D.N.Y.2003) (*"Currency Conversion I"*).

## PROCEDURAL HISTORY

On November 12, 2003, plaintiffs moved for class certification. Defendants opposed plaintiffs' motion, arguing *inter alia* that "most putative class members voluntarily signed a binding arbitration agreement with their credit card issuers" that precludes their participation in the defined classes. *Currency Conversion II*, 224 F.R.D. at 569. Defendants also requested that cardholders with binding arbitration agreements be estopped from litigating their claims against other card issuing banks and the network defendants. *Currency Conversion II*, 224 F.R.D. at 570. This Court rejected that request with respect to the non-issuing banks "because the non-issuing defendant banks were not parties to those agreements, and the contract provisions did not extend to them." *Currency Conversion II*, 224 F.R.D. at 570.

Subsequently, on November 3, 2004, defendants filed a joint motion for reconsideration, arguing that the Second Circuit's intervening decision in *JLM Industries, Inc. v. Stolt–Nielsen SA,* 387 F.3d 163 (2d Cir.2004), re-

quires this Court to apply the estoppel doctrine to claims against non-issuing banks and the network defendants. In addition, defendants jointly moved to stay litigation pending arbitration. This Court agreed, holding that the "arbitration agreements entered into before this litigation are enforceable against the cardholders by the signatories, network defendants and the non-signatory banks," based on the estoppel doctrine enunciated in *JLM. Currency Conversion III,* 361 F.Supp.2d at 245. Plaintiffs now move for reconsideration of only those portions that resulted from defendants' stay motions. (Plaintiffs' Reply in Support of Motion for Reconsideration, dated Apr. 27, 2005 ("Pl.Reply") at 5.)

## DISCUSSION

### I. *Motion for Reconsideration Standard*

■ Motions for reconsideration are governed by Local Civil Rule 6.3, which is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Dietrich v. Bauer,* 76 F.Supp.2d 312, 327 (S.D.N.Y.1999). A motion for reconsideration must include "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Rule 6.3; *see also Consol. Gold Fields v. Anglo Am. Corp.,* 713 F.Supp. 1457, 1476 (S.D.N.Y.1989); *Dietrich,* 76 F.Supp.2d at 327. Thus, a motion for reconsideration cannot assert new arguments or claims which were not before the court on the original motion. *See, e.g., Kunica v. St. Jean Fin., Inc.,* 63 F.Supp.2d 342, 346 (S.D.N.Y.1999) ("[A] party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court." (citation and internal quotation marks omitted)).

■ The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. A motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.

2000) (citation and internal quotation marks omitted).

### II. *Waiver of Arbitration Rights*

■ "[T]here is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred." *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812,* 242 F.3d 52, 57 (2d Cir.2001) (internal quotation marks omitted); *see Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998). Any doubts regarding the issue of waiver should be resolved in favor of arbitration. *See PPG Indus., Inc. v. Webster Auto Parts Inc.,* 128 F.3d 103, 107 (2d Cir.1997); *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995) (citing *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). "The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules." *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993).

"A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir.1990); *see also Ivax Corp. v. B. Braun of Am., Inc.,* 286 F.3d 1309, 1315–16 (11th Cir.2002); *Stifel, Nicolaus & Co. v. Freeman,* 924 F.2d 157, 158 (8th Cir.1991).

### A. *VISA and MasterCard*

■ Plaintiffs argue that this Court should find that defendants VISA and MasterCard (collectively, the "network defendants") waived their right to stay litigation pending arbitration under the equitable estoppel doctrine. (Plaintiffs' Memorandum in Support of Motion for Reconsideration, dated Mar. 23, 2005 ("Pl.Mem.") at 1.) Plaintiffs contend that while this Court found that Chase and Citibank waived their right to stay litigation, it did not address the issue with respect to VISA and MasterCard. (Pl. Mem. at 1.) They further argue that the network defen-

dants should have moved to compel arbitration based on the estoppel doctrine after this Court's July 7, 2003 opinion.

By way of background, on July 7, 2003, this Court ruled on the motion by defendants Bank One Delaware (f.k.a. First USA), Bank of America, MBNA and their respective parent corporations to refer the claims against them by their own cardholders to arbitration.[1] *Currency Conversion I*, 265 F.Supp.2d 385. As there were no MBNA cardholder plaintiffs at that time, this Court did not consider whether their claims belonged in arbitration. *Currency Conversion I*, 265 F.Supp.2d at 398. However, this Court held that Bank One Delaware (f.k.a. First USA) and Bank of America cardholders were required to proceed to arbitration. *Currency Conversion I*, 265 F.Supp.2d at 416. Specifically, this Court held that cardholders with enforceable arbitration clauses were estopped from litigating their claims against "the issuing banks as well as entities bearing a 'close relationship' with the issuing banks, such as the issuing banks' parent or subsidiary corporations." *Currency Conversion II*, 224 F.R.D. at 570; *Currency Conversion I*, 265 F.Supp.2d at 403.

This Court noted that cardholders with enforceable arbitration clauses were not estopped from bringing antitrust claims against non-issuing defendant banks. *See Currency Conversion I*, 265 F.Supp.2d at 410. That is, this Court found that the estoppel doctrine did not extend to the non-issuing defendant banks, because they were not parties to those agreements. *Currency Conversion II*, 224 F.R.D. at 570; *Currency Conversion I*, 265 F.Supp.2d at 410. Indeed, even plaintiffs recognize that:

> The Court . . . only stayed a narrow subset of *specific* claims: a cardholder who was held subject to a valid arbitration clause must arbitrate the antitrust claim *only* against that cardholder's issuer Defendant. [*Currency Conversion I*, 265 F.Supp.2d at 410.] This Court held that cardholders of these moving Defendants are free to assert

their antitrust conspiracy claims against any co-conspirator Defendant, just as other cardholders may assert an antitrust claim against one of the moving Defendants. *Id.* at 410, 415 (stating that arbitrating plaintiffs' "claims against the other coconspirators remain here before the court").

(Plaintiffs' Reply Memorandum in Support of their Motion for Class Certification, dated Apr. 2, 2004, at 47 (emphasis in original) (internal alterations omitted).) Thus, cardholders remained free to bring antitrust claims against defendants other than their issuing banks, because this Court rejected the non-issuing banks and network defendants' reliance on the estoppel doctrine to compel arbitration.

As this Court had already decided that estoppel would only extend in certain circumstances, *see Currency Conversion I*, 265 F.Supp.2d at 410, it would have been futile for the network defendants to move to compel arbitration based on the estoppel doctrine. Thus, the network defendants' failure to file such a motion after *Currency Conversion I* does not amount to a waiver. *See Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir.1988) (finding no waiver where defendants' earlier motion to compel would have been futile in light of the then-existing law); *Ilan v. Shearson/American Express, Inc.*, 632 F.Supp. 886, 890 (S.D.N.Y.1985) (finding no waiver where "defendants properly perceived little basis for a motion to compel arbitration" until after the Supreme Court recognized a right to do so); *see also Adams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. Civ–84–2645–P, 1988 WL 90834, at *2 (W.D.Okla. April 21, 1988) (finding no waiver where defendants waited three years after filing suit to move to compel arbitration, because earlier law did not allow arbitration of claims based on the Securities Act of 1933).

In any event, defendants' opposition to plaintiffs' class certification motion was their next pre-scheduled opportunity to file pa-

---

1. Similar to Bank One Delaware (f.k.a. First USA), Bank of America and MBNA, Household also added its arbitration clause prior to this litigation. Plaintiffs concede that Household did not waive its right to compel arbitration. (Pl. Mem. at 9 n. 6; Letter to Court from Bonny E. Sweeney, Esq., dated Dec. 8, 2004.)

pers with the Court. In that submission, defendants argued that estoppel principles required exclusion of all cardholders with enforceable agreements from any class. (Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion for Class Certification, dated Feb. 18, 2004, at 58–63.) Despite defendants' argument, this Court reiterated that cardholders' arbitration clauses did not extend beyond their issuing defendant banks and their corporate parents. *Currency Conversion II*, 224 F.R.D. at 570. Indeed, it was after the Second Circuit's ruling in *JLM Industries* that this Court reconsidered its prior holdings and found the estoppel doctrine applicable to plaintiffs' claims against non-issuing banks and network defendants. *Currency Conversion III*, 361 F.Supp.2d at 260.

As already noted, there is a strong presumption in favor of arbitration, and waiver of the arbitration right may not be lightly inferred. *See Coca–Cola Bottling Co.*, 242 F.3d at 57; *see also Cotton*, 4 F.3d at 179. Thus, because a motion to compel arbitration by the network defendants would have been futile, a finding that the network defendants waived their right to arbitrate based on the estoppel doctrine is unwarranted. *See, e.g., Ackerberg v. Johnson*, 892 F.2d 1328, 1333 (8th Cir.1989) ("[W]e cannot 'require a litigant to engage in futile gestures merely to avoid a claim of waiver.'" (quoting *Benoay v. Prudential–Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir.1986))); *Conover*, 837 F.2d at 868; *Adams*, 1988 WL 90834, at *2; *Ilan*, 632 F.Supp. at 890; *see also Richard Nathan Corp v. Diacon–Zadeh*, 101 F.Supp. 428, 429 (S.D.N.Y.1951) ("In order to constitute a waiver there must be an intentional relinquishment of a *known right* with both knowledge of its existence and an intention to relinquish it." (emphasis added)).[2]

### B. *Non-issuing Defendant Banks*

Plaintiffs next argue that non-issuing defendant banks waived their right to compel arbitration and/or stay litigation based on

equitable estoppel. (Pl. Mem. at 9.) Plaintiffs did not present this argument to the Court in their opposition to defendants' stay motions. (*See* Plaintiffs' Opposition to Defendants' Motions to Stay Litigation, dated Jan. 18, 2005, at 6–7; *see also* Plaintiffs' Opposition to Defendants' Joint Motion for Reconsideration, dated Nov. 22, 2004, at 1–8.) Accordingly, this Court denies plaintiffs' motion for reconsideration on this issue. *See Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir.1991) (holding that a court may not entertain "arguments raised for the first time on a motion for reconsideration"), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); *Wiesner v. 321 W. 16th St. Assocs.*, No. 00 Civ. 1423(RWS), 2000 WL 1585680, at *4 (S.D.N.Y. Oct. 25, 2000) ("Plaintiffs' motion for reconsideration is denied because the Plaintiffs raise new arguments and cite to case law not previously put before the Court."); *Kunica*, 63 F.Supp.2d at 346. Moreover, even assuming this argument was timely raised, for the reasons set forth with respect to the network defendants, this Court finds that non-issuing defendant banks did not waive their right to arbitrate based on the estoppel doctrine. *See supra* section II.A.

### III. *Creation of Subclasses*

Next, plaintiffs request a separate subclass of cardholders whose cardholder agreements contain valid arbitration clauses. (Pl. Mem. at 11.) Plaintiffs concede, however, that they did not raise this issue prior to their motion for reconsideration. (Pl. Mem. at 11; Pl. Reply at 6.) Accordingly, this Court denies plaintiffs' motion for reconsideration on this issue. *See Caribbean Trading*, 948 F.2d at 115; *Wiesner*, 2000 WL 1585680, at *4; *Kunica*, 63 F.Supp.2d at 346.

### IV. *Membership of the Chase and Citibank Subclasses*

Plaintiffs seek reconsideration of this Court's previous ruling that three categories

---

2. In its previous opinion, this Court found that Chase and Citibank waived their right to compel arbitration. *Currency Conversion III*, 361 F.Supp.2d at 257–58. However, Chase and Citibank had not moved to compel arbitration even against *their own* cardholders. *Currency Conver-* *sion III*, 361 FSupp.2d at 257–58. Such a motion would not have been futile, and Chase and Citibank's somnolence with respect to their arbitration rights effects a waiver. *Currency Conversion I*, 265 F.Supp.2d at 416.

of Chase and Citibank cardholders are excluded from the relevant subclasses: (1) cardholders who opened new credit card accounts after this suit began; (2) cardholders whose accounts were acquired by Chase or Citibank after this litigation began; and (3) cardholders whose first foreign exchange transaction on their credit card occurred after the arbitration clause was added to their cardholder agreement during this litigation. (Pl. Mem. at 13.) *See Currency Conversion III,* 361 F.Supp.2d at 258.

■ Plaintiffs have failed to satisfy their burden of showing that cardholders in the first two categories were members of the certified subclasses when this litigation commenced. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (holding that the party seeking class certification bears the burden of establishing the requisites of Rule 23); *accord Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). Cardholders who obtained Chase or Citibank credit cards *after* this litigation commenced could not have been putative class members at the outset of this action. (*See* Second Consolidated Amended Class Action Complaint ("Compl.") ¶¶ 139–41 (defining the putative classes to include the then-existing cardholders).) Thus, those cardholders had no rights in this action when this litigation commenced. *Cf. Currency Conversion III,* 361 F.Supp.2d at 251 ("The putative class members' rights in this litigation were protected as of the filing date of the complaint."). Accordingly, this Court rejects plaintiffs' contention that cardholders in the first two categories should be included in the certified subclasses.

■ Similarly, with respect to cardholders whose first foreign exchange transaction occurred after the addition of the arbitration clause to their cardholder agreement, there was no cognizable injury when this action commenced. *See Currency Conversion III,* 361 F.Supp.2d at 258. For class certification, "plaintiffs must demonstrate the existence of an 'aggrieved class' [and] that the aggrieved class can be readily identified." *Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y.2003); *see Hnot v. Willis Group*

*Holdings Ltd.,* No. 01 Civ. 6558(GEL), 2005 WL 659475, at *2 (S.D.N.Y. Mar. 21, 2005) ("The class that plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling."); *People United for Children, Inc. v. City of New York,* 214 F.R.D. 252, 256 (S.D.N.Y.2003) ("[C]ourts should ensure that the class definition is 'precise, objective, and presently ascertainable.'" (citation omitted)); Manual for Complex Litigation § 21.222 (4th ed.2004); *see also Boucher v. Syracuse Univ.,* 164 F.3d 113, 118 (2d Cir.1999) ("District judges have broad discretion over class definition."). While a class may contain future members, *see Ashe v. Bd. of Elections,* 124 F.R.D. 45, 47 (E.D.N.Y.1989), an individual cannot be a putative class member if he suffers no injury or is not under imminent threat of injury. *See Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n,* 624 F.Supp. 856, 858 (S.D.N.Y.1985) ("[I]ndividual injury, whether past or future, remains the crux of a private action, and where a plaintiff is unable 'to cite to any contemporaneous damages from which a reasonable inference of future damages could be drawn,' the 'significant threat' of injury that would entitle it to injunctive relief has not been shown.") (quoting *Machovec v. Council for Nat'l Reg. of Health Service Providers in Psych., Inc.,* 616 F.Supp. 258, 267 (E.D.Va.1985)).

Cardholders whose first foreign exchange transaction occurred after addition of the arbitration clause to their cardholder agreement had not suffered an antitrust injury when the arbitration clause was added. As this Court has previously noted, any injury at that time was "hypothetical." *Currency Conversion III,* 361 F.Supp.2d at 258; *see also* 15 U.S.C. § 26 (providing for injunctive relief to protect against "threatened conduct that *will* cause loss or damage" (emphasis added)). Thus, before these cardholders' rights in this action could have materialized, they agreed to forego those rights in favor of arbitration. Accordingly, cardholders in the third category may not be included in the certified classes.

## V. Representation of Diners Club and Providian Cardholders

Plaintiffs also request that this Court clarify its ruling to make clear that the existing class representatives can adequately represent Diners Club and Providian cardholders in pursuing their antitrust claims. (Pl. Mem. at 15.)

While Rule 23 must be liberally interpreted and not given a strict construction, *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997), the party seeking class certification bears the burden of establishing the requisites of Rule 23, *see Amchem*, 521 U.S. at 614, 117 S.Ct. 2231; *Caridad*, 191 F.3d at 291. Further, plaintiffs must show that each class they seek is manageable as a class action. *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, No. 98 Civ. 1492, 2000 WL 1364358, at *1 (E.D.N.Y. Sept. 20, 2000) (citing *Amchem Prods.*, 521 U.S. at 616, 117 S.Ct. 2231 (finding "difficulties likely to be encountered in the management of a class action" pertinent to Rule 23(b)(3) analysis); *Blyden v. Mancusi*, 186 F.3d 252, 271 (2d Cir.1999) (evaluating the "management issue")).

As this Court has previously noted, the Complaint asserts different factual allegations against Diners Club and the other defendant issuing banks. (*Compare* Compl. ¶ 120–21 (noting that Diners Club only charges one tier of the currency conversion fee, which it keeps), *with* Compl. ¶ 100 (noting that Citibank charges two tiers of currency conversion fees, one for the network defendants and the other for itself).) The Diners Club accounts were not part of the VISA or MasterCard networks (Compl.¶¶ 119–121), a fact that makes claims against it atypical of those against the issuing banks. While the Complaint details the issuing banks' actions taken via the VISA or MasterCard networks to set the foreign currency conversion fees (Compl.¶¶ 101–118), Diners Club benefited indirectly through "Citibank's participation in the MasterCard and VISA networks" (Compl.¶ 121). Thus, Diners Club's involvement in the alleged conspiracy was "markedly different" than the rest of the defendants. *See Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 602 (S.D.N.Y.1986) ("[C]lass treatment will be foreclosed if the representative's legal and factual positions are 'markedly different' from those of other class members, and when those differences go to the very subject matter of the litigation." (internal citations and quotations omitted)); *see also David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 757 (S.D.N.Y.1988) ("[T]he key inquiry of Rule 23(a)(2) is whether [class members'] claims arise from a common nucleus of facts."); *cf. In re NASDAQ Market–Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y.1997) (finding class certification appropriate where all claims arose from "the same price-fixing conspiracy"). Accordingly, because no named plaintiff is a Diners Club cardholder, this Court declines to certify Diners Club subclass.

Plaintiffs argue that because Providian cardholders were injured by the alleged conspiracy, this Court should find the named plaintiffs, who are Chase and Citibank cardholders, adequate to represent Providian cardholders' in this litigation. (Pl. Reply at 9.) However, with the exception of conclusory statements, plaintiffs have advanced no proof to show that the Chase and Citibank cardholders would adequately protect the interests of Providian cardholders. *See Amchem*, 521 U.S. at 614, 117 S.Ct. 2231; *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir.1996) (noting that under Rule 23(a)(4), a plaintiff seeking class certification must establish he or she will fairly and adequately represent and protect the interests of the class). The requirement of adequate representation is "essential to due process, because a final judgment in a class action is binding on all class members." *In re Am. Med. Sys.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)); *In re GMC Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir.1995) (Rule 23 requires ensuring that it is fair to bind the interests of the absent class members).

The interests of the named plaintiffs diverge from those of Providian cardholders. Specifically, the named plaintiffs need not show that Providian conspired with any of

the issuing banks for them to recover in this action, while Providian cardholders must establish a conspiracy between Providian and the other issuing banks. Should the named plaintiffs fail to establish Chase and/or Citibank's participation in the conspiracy, they would have little incentive to prove the case on behalf of Providian cardholders because they would recover nothing for their efforts. Accordingly, the named plaintiffs are not adequate representatives for Providian cardholders.

## VI. *Plaintiffs' Request for Arbitration–Related Discovery*

Lastly, plaintiffs request arbitration-related discovery "regarding the identification of every general purpose card portfolio held by defendants during the Class Period." (Pl. Mem. at 18.) Plaintiffs make this request for the first time. Plaintiffs' request for discovery is untimely at this juncture of this litigation. Further, "[f]act discovery has closed and the trial date looms." *Currency Conversion III*, 361 F.Supp.2d at 247. Accordingly, this Court denies plaintiffs' request for additional discovery at this time.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration of this Court's March 9, 2005 Memorandum and Order is denied.

SO ORDERED.