**In re CURRENCY CONVERSION FEE ANTITRUST LITIGATION**

**Gilbert Schrank, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Citibank (South Dakota), N.A., Defendant.**

**No. 03 Civ.2843(WHP).**

United States District Court, S.D. New York.

Dec. 2, 2004.

Sheldon V. Burman, Sheldon V. Burman, P.C., New York, New York, for Plaintiffs.

G. Oliver Koppell, Law Offices of G. Oliver Koppell & Associates, New York, NY, for Plaintiffs.

A. Robert Pietrzak, Benjamin Nagin, Sidley Austin Brown & Wood LLP, New York, NY, for Defendants.

Charles W. Douglas, David F. Graham, Theodore R. Scarborough, Eric H. Grush, Sidley Austin Brown & Wood LLP, Chicago, Illinois, for Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This putative class action stems from plaintiff Gilbert Schrank's ("Plaintiff" or "Schrank") allegations that defendant Citibank (South Dakota), N.A. ("Citibank") unlawfully imposed a foreign currency conversion fee ("conversion fee") on its cardholders.[1] In particular, Schrank alleges that the conversion fees charged for for-

---

1. Familiarity with this Court's prior Memoranda and Orders is presumed. *See In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2003 WL 22097502 (S.D.N.Y. Sept.10, 2003); *see also In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21–95, 2004 WL 2327938 (S.D.N.Y. Oct.15, 2004); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385 (S.D.N.Y.2003).

eign transactions on his Citibank credit card violate certain New York state consumer laws and the common laws of other states.

Presently before this Court is Plaintiff's motion to certify two classes. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Schrank used his Citibank credit card for purchases in foreign countries. (Verified Complaint, dated Nov. 10, 2003 ("Compl.") ¶¶ 2, 4.) Citibank assessed a conversion fee on each of Schrank's foreign currency transactions, equaling three percent of the foreign purchase's U.S. dollar amount. (Compl.¶ 9.) There are two tranches of currency conversion fees charged by Citibank. The first is a one percent fee, charged and retained by either Visa or MasterCard. The second tier, typically two percent on top of the one percent fee, is charged and retained by Citibank. (Compl.¶ 9.)

Schrank alleges that Citibank does not disclose the conversion fee in its literature or monthly statements. (Compl.¶ 12.) Instead, Citibank conceals the conversion fee by adding it to its "secret computations of foreign currency conversion rates." (Compl.¶ 9.) Schrank contends that the conversion fee bears no relation to Citibank's actual costs in converting its customers' foreign charges into U.S. dollars. (Compl.¶ 16.) He alleges that Citibank performs currency conversion automatically through a computer program that imposes a *"de minimus* cost." (Compl.¶ 16.)

Plaintiff alleges six causes of action: (1) violation of New York Personal Property Law ("NYPPL"), Article 10, § 413(3)(a); (2) unfair and deceptive practices in violation of New York General Business Law § 349 ("Section 349"); (3) common law fraud; (4) unconscionable charges under the common law and UCC § 2–202; (5) violation of the obligation of good faith pursuant to common law and UCC § 1–203; and (6) unjust enrichment. (Compl.¶¶ 27–38.) Purporting to bring this suit on behalf of himself and others who were charged conversion fees, Schrank seeks certification of two classes pursuant to Rule 23 of the Federal Rules of Civil Procedure: [2]

> Class I: All residents of the State of New York who were issued, or will be issued, Visa and/or MasterCard credit cards by defendant, subject to the statutory provisions set forth in the First and Second causes of action.

> Class II: All persons and entities throughout the United States, with respect to the common law claims set forth in the Third through Sixth causes of action.

(Compl. ¶ 21; Plaintiff's Memorandum in Support of Class Certification ("Pl.Mem.") at 14.)

Citibank opposes this motion, arguing, *inter alia,* that Schrank is not typical of the putative class members and that individual issues would overwhelm any purported common ones. (Citibank's Memorandum in Opposition of Class Certification ("Def.Mem.") at 1.) In addition, Citibank argues that if a class is certified, cardholders with arbitration agreements should be excluded. (Def. Mem. at 21–22.)

## DISCUSSION

### I. Class Certification Standards

■ Rule 23 of the Federal Rules of Civil Procedure governs class certification. *Parker v. Time Warner Entm't Co., L.P.,* 331 F.3d 13, 18 (2d Cir.2003); *Benner v. Becton Dickinson & Co.,* 214 F.R.D. 157, 162 (S.D.N.Y.2003). A district court must conduct a "rigorous analysis" to ascertain whether the Rule 23 requirements have been satis-

---

**2.** To buttress his argument, Plaintiff repeatedly cites to *Schwartz v. Visa International Corporation,* No. 822404–4, 2003 WL 1870370 (Cal. Sup. Ct. Alameda Cty. Apr. 7, 2003). (Pl. Mem. at 1–5, 12; Reply Mem. at 1, 7–9, 11.) *Schwartz,* however, was not a Rule 23 class action, but instead involved a suit brought by a plaintiff as a private attorney general under California's consumer laws. *See Schwartz,* No. 822404–4, 2003

WL 1870370, at *2 (noting that "Plaintiff's claims at trial were founded exclusively on California's Unfair Competition Law"); *see also Schwartz v. Visa Int'l Corp.,* No. C 00–3955 THE, 2001 WL 30535, at *1 (N.D.Cal. Jan.9, 2001). Because California's consumer laws do not resemble Rule 23, *Schwartz* has no application here.

fied. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *accord Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999). While Rule 23 must be liberally interpreted and not given a strict construction, *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997), the party seeking class certification bears the burden of establishing the requisites of Rule 23, *see Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Caridad,* 191 F.3d at 291.

There are two prerequisites for class actions. First, the party seeking class certification must prove that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2d Cir. 2001). Second, the party seeking class certification must show that the proposed class action falls within one of the types of class actions maintainable under Rule 23(b) because: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interest of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. Fed.R.Civ.P. 23(b); *Visa,* 280 F.3d at 133.

■ When considering a motion for class certification, a court should consider the allegations in the complaint as true. *Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978). A court may also consider material outside the pleadings in determining the appropriateness of class certification. *Kaczmarek v. Int'l Bus. Mach. Corp.,* 186 F.R.D. 307, 311 (S.D.N.Y.1999) (citing *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982)). Nonetheless, resolution of a class certification motion should not become "a preliminary inquiry into the merits" of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see Visa,* 280 F.3d at 133. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140 (internal quotation marks omitted).

## II. *Rule 23(a) Requirements*

### A. *Numerosity*

■ Plaintiff must show that the proposed class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticable" simply means difficult or inconvenient, not impossible. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993); *Reynolds v. Giuliani,* 118 F.Supp.2d 352, 388 (S.D.N.Y.2000). Further, Plaintiff does not need to provide a precise number for the class size. *See Robidoux,* 987 F.2d at 935; *In re Laser Arms Corp. Sec. Litig.,* 794 F.Supp. 475, 494 (S.D.N.Y.1989) ("Since the numerosity requirement speaks in terms of impracticability rather than impossibility, plaintiffs need not enumerate the precise number of potential plaintiffs in the class when reasonable estimates will suffice.").

■ Here, Plaintiff contends that the proposed classes "consist[ ] of hundreds of thousands of holders of Visa and MasterCard credit cards issued by [Citibank]." (Compl.¶ 22.) These allegations satisfy the numerosity requirement. *Cons. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) ("[N]umerosity is presumed at a level of 40 members.").

### B. *Commonality and Typicality*

The requirement of typicality overlaps with that of commonality. *Marisol,* 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."). However, Citibank does not challenge Plaintiff's appli-

cation for class action certification based on lack of commonality.

■ "The crux of [the typicality] requirement[ ] is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Marisol,* 126 F.3d at 376 (quoting *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364); *accord Hirschfeld v. Stone,* 193 F.R.D. 175, 182–83 (S.D.N.Y. 2000); *Reynolds,* 118 F.Supp.2d at 388.

■ Specifically, the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ... irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux,* 987 F.2d at 936–37; *accord Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir.2001). The factual background of the named plaintiff's claim need not be identical to that of the putative class members as long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad,* 191 F.3d at 293 (citation omitted).

■ "In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class." *Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 316 (S.D.N.Y. 2003). Although "the mere existence of individualized factual questions with respect to the class representative's claims will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (citation omitted); *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990); *Langner v. Brown,* No. 95 Civ. 1981(LBS), 1996 WL 709757, at *3 (S.D.N.Y. Dec. 10, 1996) (class certification may be denied if the named plaintiffs are vulnerable

to unique defenses that "attack the heart of the plaintiff's case"). This rule applies to defenses that negate the plaintiff's case-in-chief and to affirmative defenses for which defendant bears the burden of proof. *See Spann,* 219 F.R.D. at 317–18; *Leroy v. Paytel III Mgmt. Assocs., Inc.,* No. 91 Civ. 1933(JFK), 1992 WL 367090, at *2–3 (S.D.N.Y. Nov. 24, 1992) (finding no typicality where a statute of limitations defense applied to plaintiff's claims but might not have applied to the claims of the other putative class members).

■ Citibank argues that Schrank's claims are not typical of other putative class members. (Def. Mem. at 4–5.) However, Section 413 of the New York Personal Property Law restricts assessment of fees not delineated in the statute, irrespective of the plaintiff's conduct or circumstances. N.Y. Pers. Prop. Law § 413(5). Therefore, Schrank is typical of all New York class members who were assessed the conversion fee purportedly in violation of New York Personal Property Law § 413(5).

■ In contrast, Schrank fails to show typicality with respect to his other claims. Schrank concedes that the conversion fee assessed on his foreign purchases was "small and not of any enormous economic consequences." Consequently, he did nothing about it. (Declaration of Benjamin R. Nagin, dated Feb. 18, 2004 ("Nagin Decl.") Ex. 7: Shrank Deposition Transcript at 87–88.) Schrank's continued use of his credit card after learning of the conversion fees opens a possible defense that he was not deceived by the purported misrepresentation or nondisclosure. *See Gary Plastic Packaging,* 903 F.2d at 179–80 (holding that the plaintiff was an inappropriate class representative since its claim was subject to several unique defenses including its continued purchases of certificates of deposit despite having notice of defendant's alleged fraud). Citibank intends to raise this defense. (Def. Mem. at 9–10.) Such a defense makes Schrank atypical of class members who paid the conversion fee unknowingly. *See Baffa,* 222 F.3d at 59–60 (finding the plaintiff atypical because she had more information than the other putative class members, and she continued to make

stock purchases after obtaining notice of the alleged fraud); *Gary Plastic*, 903 F.2d at 179–80; *Kovaleff v. Piano*, 142 F.R.D. 406, 408 (S.D.N.Y.1992) (finding the plaintiff atypical where he continued making investments after learning of the alleged fraud). Thus, this Court finds that Schrank satisfies the typicality requirement with respect to his NYPPL claim, but not with respect to his other claims.

### C. *Adequacy*

■ Adequate representation requires that class counsel be qualified, experienced and generally able to conduct the litigation, and that the named plaintiff's interests be congruent with those of absentee class members. *See Amchem Prods.*, 521 U.S. at 625–26, 117 S.Ct. 2231; *Falcon*, 457 U.S. at 157–58, 102 S.Ct. 2364; *Marisol A.*, 126 F.3d at 378.

■ Citibank argues that Schrank fails the adequacy requirement because he is a "close personal friend of his attorney," and they socialize together. (Citibank Mem. at 5–6.) Citibank speculates that Schrank's close relationship with class counsel would make it difficult for him to "exercise independent judgment on behalf of his absent class members." (Citibank Mem. at 6–7.) This hypothetical conflict of interest is too diaphanous to bar certification at this stage. *In re Visa*, 280 F.3d at 145 (holding that speculative conflict should be disregarded at the class certification stage). There is no dispute that Plaintiff's counsel is qualified and experienced. Further, the Complaint asserts that "Plaintiff will fairly and adequately protect the interests of the Class." (Compl. ¶ 25; Reply Mem. at 12–15.) In light of Citibank's hypothetical conflict of interest, Schrank's pleadings sufficiently establish that the representative parties will fairly and adequately protect the interests of the class. *See In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 483 (S.D.N.Y.2000).

Thus, this Court finds that Schrank's proposed class of New York state residents satisfies Rule 23(a) with respect to the NYPPL claim, but not with respect to the Section 349, common law fraud, unconscionability, violation of good faith obligation and unjust enrichment claims.

### III. *Rule 23(b)(3) Requirements*

Plaintiff seek certification pursuant to Rule 23(b)(3), which states that a class action is appropriate when

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). A district court is required to take a close look at a putative class under Rule 23(b)(3). *Amchem*, 521 U.S. at 615–16, 117 S.Ct. 2231. In assessing whether to certify the class, a court should consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### A. *Predominance*

■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.'" *Visa*, 280 F.3d at 136 (quoting *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir.2000)). This requirement is more demanding than the commonality requirement under Rule 23(a); thus, a court must deny certification where individual issues of fact abound. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 349 (S.D.N.Y.2002). Of course, to find

predominance, a Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir.2002) ("Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of questions of law and fact common to the members of the class.") (internal quotation marks omitted); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 287 (S.D.N.Y.2003); *Fisher v. Plessey Co. Ltd.*, 103 F.R.D. 150, 155 (S.D.N.Y.1984). Plaintiff bears the burden of establishing predominance. *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 54 (S.D.N.Y.2000).

Except for his recitation of statutory text for the NYPPL claim (Compl.¶¶ 4–15), Schrank's pleadings are deficient concerning how Citibank's conversion fee is unlawful. Further, Plaintiff's Complaint and motion papers do not convince this Court that common proof regarding the elements of the asserted claims would predominate. This alone requires denial of Plaintiff's motion for class certification with respect to his non-NYPPL claims. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993) ("All of the[ ] elements [of Rule 23] are prerequisites to certification; failure to meet any one of them precludes certification as a class."); *see also Daniels v. City of New York*, 198 F.R.D. 409, 413 (S.D.N.Y.2001) ("[P]laintiff bears the burden of establishing that the class meets the Rule 23 requirements."); *Selby*, 197 F.R.D. at 54; *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69–70 (E.D.N.Y.2000). Nevertheless, this Court analyzes each of Plaintiff's claims regarding predominance.

### 1. Claims Based on New York Consumer Protection Laws

#### a. New York Personal Property Law

Section 413 of the NYPPL governs charges imposed by credit card issuing companies. In pertinent part, the NYPPL provides that "[n]o fee, expense, delinquency, collection or other charge whatsoever shall be taken, received, reserved or contracted for by the seller under or holder of a retail instalment [sic] credit agreement except as provided in this section." N.Y. Pers. Prop.

Law § 413(5)(a). Section 413(5)(b) lists seven types of charges that a credit card issuing company may impose: (1) an annual membership fee, (2) a late payment fee, (3) an overlimit charge, (4) a returned payment charge, (5) a charge for replacement of a lost or stolen credit card, (6) a charge for additional credit cards, and (7) a charge for copies of sales slips, monthly statements or other documents not required by federal or state law governing billing error disputes. N.Y. Pers. Prop. Law § 413(5)(b). Plaintiff contends that charges not catalogued in the NYPPL are unlawful. If Plaintiff attempts to establish an NYPPL violation, questions of Citibank's alleged liability would predominate. Citibank acknowledges that class certification is appropriate for Schrank's NYPPL claim. (Transcript of Oral Argument, dated May 7, 2004 ("Tr.") at 106.)

#### b. Section 349

Plaintiff alleges that Citibank's conversion fee violated Section 349 of the New York General Business Law. (Compl.¶¶ 29–30.) Section 349 "declares unlawful deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992) (brackets and internal quotation marks omitted). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (citations omitted); *accord Maurizio v. Goldsmith*, 230 F.3d 518, 521–22 (2d Cir.2000). The causation element is essential: "The plaintiff ... must show that the defendant's 'material deceptive act' caused the injury." *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608; *see also Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp.2d 240, 266 (S.D.N.Y.2001). "In addition, a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608. However, assessment of specific causation often dissolves into a "myriad of individualized causa-

tion inquiries." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 66 (S.D.N.Y.2002).

To prevail on their Section 349 claim, each plaintiff must prove that Citibank caused his injury. *Petitt*, 153 F.Supp.2d at 266. The cardholder agreement expressly provides for assessment of conversion fees. (Declaration of Susan Bridge, dated Feb. 18, 2004 ("Bridge Decl.") Ex. 1: Cardmember Agreement.) To prove causation, each plaintiff must show that Citibank's disclosure of the conversion fees was inadequate, thus deceiving the cardholder into using his Citibank card for foreign purchases when other more economical options were available. *See Pelman v. McDonald's Corp.*, No. 02 Civ. 7821(RWS), 2003 WL 22052778, at *10–11 (S.D.N.Y. Sept. 3, 2003) (noting that plaintiff must show a connection between the allegedly deceptive practice and her injuries). Such a showing entails individual inquiries, including an examination of each cardholder's understanding and whether it was justified. *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255–56 (2d Cir.2002) (class certification of fraud claims not appropriate where misrepresentations cannot be demonstrated using generalized proof rather than individualized proof).

█ While some common questions concerning Citibank's assessment of conversion fees exist, *individual questions about causation would overwhelm them.* Accordingly, Plaintiff's Section 349 claim is not appropriate for class certification.

### 2. *Claims Based on Common Law*

Schrank asserts four claims based on common law and the Uniform Commercial Code. Citibank contends that Schrank's claims of fraud-by-omission, unconscionability, breach of the covenant of good faith and unjust enrichment require this court to apply the laws of all fifty states, thus, defeating predominance. (Def. Mem. at 17–19.)

█ The New York choice of law rules require application of the substantive law of the state with the most significant interest in the lawsuit. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999). With respect to tort claims, this is usually the state where the tort took place. *Lee*, 166 F.3d at 545 (conduct regulating rules usually requires ap-

plication of law of place of tort); *see also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 312–13 (5th Cir.2000); *Krock v. Lipsay*, 97 F.3d 640, 645–46 (2d Cir.1996); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J.1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."). The putative class members reside in all fifty states and the District of Columbia. The torts arose in all fifty states and the District of Columbia— where the individual cardholders were solicited as cardholders, signed their cardholder agreements and received their monthly statements. Therefore, the laws of all fifty states and the District of Columbia must be applied to ensure proper adjudication of all class member claims. *See Lewis Tree Service, Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 237 (S.D.N.Y.2002). Indeed, the choice-of-law analysis reflects due process concerns and may not be altered in a nationwide class action simply because of logistical difficulties. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Thus, the laws of all fifty states would need to be applied to enforce the due process rights of plaintiffs in this nation-wide action.

"[V]ariations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741; *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 165 (2d Cir.1987) (noting the possibility of "widespread disagreement" where a federal court applies the common laws of different states); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67–68 (S.D.N.Y.2002) (noting that claims of consumer fraud would require a court to apply "the laws of all fifty states to determine the need for proving such matters as intent, reliance, causation and injury before even addressing the form and extent of any relief that might be appropriate"). In such circumstances, courts routinely deny class certification because plaintiffs' claims would require application of the substantive law of multiple states. *See e.g., Lewis Tree*, 211 F.R.D. at 237 (denying class certification where plaintiff's claims of common law fraud would require application of the "substantive

law of over fifty states"); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, at *2 (N.D.Ill. Apr. 03, 2002) (denying class certification where plaintiff's claims of unjust enrichment would require application of the substantive law of many states).

Rather than challenge Citibank's argument, Schrank dismisses it with the cursory observation: "Differences in state law principles are generally of a relative [sic] minor nature." (Plaintiff's Reply Memorandum in Support of Class Certification ("Reply Mem.") at 9–10.) Schrank provides no additional support for that sweeping statement. At oral argument, Schrank's counsel conceded that the common law claims would require consideration of the laws of other states. (Tr. at 109–10.)

■ The state by state variations in Schrank's non-New York law claims overwhelm any common issues, and require denial of class certification. *See Castano*, 84 F.3d at 741 (noting that plaintiffs have the burden of establishing that variations do not "swamp any common issues"); *Daniels*, 198 F.R.D. at 413; *In re Ford Motor Co. Ignition Switch Prods.*, 174 F.R.D. 332, 349 (D.N.J.1997) ("In a motion for class certification, plaintiffs bear the burden of providing an extensive analysis of state law variations to determine whether there are 'insuperable obstacles' to class certification." (quotations omitted)); *cf. In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir.1998) (finding class certification appropriate where plaintiffs compiled "a series of charts setting forth comprehensive analyses of the various states' laws potentially applicable to their common law claims").

Because individual questions concerning the substantive laws of other states would overwhelm any potential common issues, Schrank's common law claims are inappropriate for class certification.[3]

## IV. *Arbitration Clauses*

Citibank contends that almost 98.5 percent of its cardholders have signed a binding arbi-

tration agreement, precluding them from being members of any class in this action. (Def. Mem. at 22 n. 9.) It is undisputed that Citibank added the arbitration clause to its shareholder agreement one year before the filing of this action.[4] (Bridge Decl. ¶¶ 8–9 (attesting that arbitration clauses were added to cardholder agreements in September–October 2001).)

■ As this Court has previously ruled, arbitration agreements signed by cardholders before commencement of the relevant litigation are fully enforceable. *Currency Conversion*, 265 F.Supp.2d at 403; *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21–95, 2004 WL 2327938, at *13–14 (S.D.N.Y. Oct. 15, 2004); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting the "liberal federal policy favoring arbitration agreements," so that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Further, those arbitration agreements may be enforced by Citibank as well as an entity bearing a "close relationship" with it, such as Citibank's parent or subsidiary corporations. *Currency Conversion*, 265 F.Supp.2d at 403.

Accordingly, this Court holds that arbitration clauses engrafted on cardholder agreements prior to this litigation are enforceable, and those cardholders who agreed to arbitrate their claims against Citibank are excluded from the class.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to certify Class I comprising New York state residents is granted in part, and Plaintiffs' motion to certify Class II comprising a nationwide class of Citibank cardholders is denied. This Court certifies the New York class as follows:

All New York state residents issued Citibank Visa or MasterCard credit cards who did not agree to arbitrate their claims and

---

3. In view of this Court's conclusion that individual questions concerning the substantive laws of multiple states predominate, Citibank's other arguments against class certification need not be addressed.

4. This lawsuit was filed on October 31, 2002.

were assessed a foreign currency conversion fee in violation of the New York Personal Property Law.